UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY FRANKLIN, | Case No. CV 15-08379-CBM (KK) |
| Plaintiff, | |
| vs. | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| SOTO, et al., | |
| Defendants. | |

## I.

## INTRODUCTION

Plaintiff Gregory Franklin ("Plaintiff"), proceeding pro se and in forma pauperis, has filed a first amended civil rights complaint ("FAC") pursuant to 42 U.S.C. § 1983 against defendants O'Neal, B. Bojoroquez, R. Sutton, S. Rivera, C. Wofford, A. H. Martinez, L. Jackson, Lugo, B. Harris, L. Rowe, L. E. McEwen, and Meador ("Defendants").  The Court has screened the FAC pursuant to 28 U.S.C. § 1915(e)(2).  As discussed below, the Court dismisses the FAC with leave to amend.

## II.

## PROCEDURAL HISTORY

On October 11, 2015, Plaintiff, an inmate at California State Prison, Los

1

1   Angeles County ("CSP-LAC"), constructively filed[1] a civil rights complaint

2   pursuant to 42 U.S.C. § 1983.  See Dkt. 1 at 1.[2]  The complaint sued defendants

3   Soto, A. H. Martinez, S. Rivera, B. Bojorquez, O'Neal, L. Rowe, R. Sutton, C.

4   Wofford, B. Harris, Nunez, Janda, and L. E. McEwen in their official and

5   individual capacities.  Id. at 3-4, 6-7.

6         On November 20, 2015, the Court issued an Order Dismissing the

7   Complaint with Leave to Amend.  Dkt. 10, Order Dismissing Compl. Leave Am.

8   The Court found the complaint failed to: (1) properly identify defendants; (2) state

9   official capacity claims against defendants Janda, Harris, McEwen, Bojorquez,

10  Sutton, Wofford, Rivera, Martinez, Rowe, and Nunez; (3) provide any legal basis

11  for allegations against defendants Harris, McEwen, and Soto; (4) state Sixth

12  Amendment right to counsel claims, and First and Fourteenth Amendment access

13  to the courts claims against defendant Janda; (5) state First Amendment retaliation

14  claims against defendants Bojorquez, O'Neal, Sutton, Wofford, and Rivera; (6)

15  state a Fourteenth Amendment due process claim against defendant Martinez; (7)

16  state an Eighth Amendment cruel and unusual punishment claim against defendant

17  Martinez; and (8) state First and Fourteenth Amendment access to the courts

18  claims against defendant Rowe.  Id. at 7-16.  The Court granted Plaintiff leave to

19

20

21  [1]      Under the "mailbox rule," when a pro se inmate gives prison authorities a
    pleading to mail to court, the court deems the pleading constructively "filed" on the
22  date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010)
    (citation omitted); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating
23  the "mailbox rule applies to § 1983 suits filed by pro se prisoners").  Here, Plaintiff
    signed and dated the complaint on "10- 15."  See ECF Docket No. ("Dkt.") 1,
24  Compl.  Concurrent with his complaint, Plaintiff signed and dated a Motion for
    Preliminary Injunction on October 11, 2015.  See id.  Thus, the Court deems
25  October 11, 2015 the filing date.
26
27
28  [2]      The Court refers to the pages of the complaint as if they were numbered
    consecutively.

file a First Amended Complaint, but warned "Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint." Id. at 17 (emphasis added).

On December 7, 2015, Plaintiff constructively filed the instant FAC pursuant to 42 U.S.C. § 1983. See Dkt. 11, FAC at 7.[3] Plaintiff again sues Defendants in their official and individual capacities. Id. at 3-7.

**III.**

**ALLEGATIONS IN THE FAC**

**A.   VISITING INCIDENTS**

**(1)   Calipatria State Prison Visits from October 2011 to January 28, 2012**

Plaintiff alleges from October 2011 to January 28, 2012, he was an inmate at Calipatria State Prison ("Calipatria") and defendants O'Neal and Bojoroquez[4] worked at Calipatria. Id. at 17. Plaintiff alleges defendants O'Neal and Bojoroquez "each made a statement about [P]laintiff['s] pending lawsuit to [P]laintiff," and "targeted his visitor" as "retaliatory actions . . . in an attempt to . . . get [P]laintiff to drop his previous lawsuits." Id. at 17, 22.

Specifically, Plaintiff alleges "in October 2011," defendant O'Neal harassed one of Plaintiff's visitors, Sonia Azevedo. Id. at 17. Plaintiff alleges "the rules and regulations state [a visitor's] dress can't be more than 2 inches above the knee," Azevedo wore a knee-length dress when she visited Plaintiff, and "several other women[] that had dresses two inches above the knee were allowed to enter [Calipatria's visiting area] without changing their dresses." Id. at 17-18. Plaintiff

---

[3]    The Court refers to the pages of the FAC as if they were numbered consecutively.

[4]    Although Plaintiff alternates the spelling of this defendant's name, the Court refers to this defendant as "Bojoroquez" because Plaintiff uses this spelling in the FAC's caption. Dkt. 11 at 1.

3

alleges defendant O'Neal "made Sonia Azevedo change her clothes, stating her dress was too short but the dress was not." Id. at 17.

In addition, Plaintiff alleges defendant Bojoroquez harassed Azevedo when she visited Plaintiff on December 10, 2011. Id. at 18. Plaintiff alleges "the institution requirement was [visitors'] strap[s] ha[d] to be 2 inches wide or more" and Azevedo wore a jacket with "a shirt underneath where the straps were 4 inches wide." Id. Plaintiff alleges defendant Bojoroquez "insisted the straps on Ms. Azevedo['s] shirt were too narrow," and despite other officers stating Azevedo's "shirt was within regulation," defendant Bojoroquez told Azevedo she had to wear her jacket or "her visiting w[ould] be terminated." Id.

Further, Plaintiff alleges defendant Bojoroquez fabricated a rule violation when Azevedo visited Plaintiff on January 28, 2012. Id. at 18-19. Plaintiff alleges at the end of Azevedo's visit, Plaintiff hugged and kissed her "as the California Department of Correction statute allowed," but defendant Bojoroquez accused Plaintiff of excessive touching, separately detained them, and stated their visit would be suspended. Id. Plaintiff alleges "when [P]laintiff objected, Officer B. Borjorquez made a comment about [P]laintiff['s] lawsuit and went and got his supervisor R. Sutton, he suspended [P]laintiff and Ms. Azevedo['s] visiting for the next day." Id. at 19.

### (2)   CSP-LAC Visits on February 25, 2012 and March 24, 2012

Plaintiff alleges "suddenly [P]laintiff was transferred to California State Prison Los Angeles County on February 12, 2012," where his visitors also endured obstacles. Id. Specifically, Plaintiff alleges Azevedo visited Plaintiff on February 25, 2012 and despite obtaining approval for visiting five months prior, "before she was allowed to enter into visiting she was forced to fill-out an unlawful visiting form." Id. at 19-20. Plaintiff alleges Azevedo was denied visiting approval, Plaintiff filed a grievance about the denial, and defendant Wofford "answer[ed] [P]laintiff['s] grievance he/she upheld and enforce[d] the legal policy." Id. at 20.

1    In addition, Plaintiff alleges Aiyana Franklin and her children tried to visit

2    Plaintiff at CSP-LAC on March 24, 2012, but they were "told that [P]laintiff could

3    not receive no visit." Id. at 21.  Plaintiff alleges he "did an inmate request and

4    inmate grievance to find out who specifically denied his visiting and why his visit

5    was denied, Associate Warden C. Wofford answer[ed] the inmate grievance and

6    refer[red] [P]laintiff to visiting Lieutenant S. Rivera without identifying

7    responsible parties or answering any of [P]laintiff['s] requests." Id.  Plaintiff

8    further alleges defendant Rivera responded to Plaintiff, "stating the visitor [wa]s

9    approved and nothing else." Id.  Plaintiff also alleges defendants Rivera and

10   Wofford "upheld and did not correct their subordinates." Id.

11   **B.    DISCIPLINARY HEARINGS**

12       **(1)    Hearing Before Defendant Martinez on March 6, 2012**

13       Plaintiff alleges on March 6, 2012, defendant Martinez retaliated against him

14   by holding an unfair disciplinary hearing regarding Azevedo's January 28, 2012

15   visit. Id. at 19.  Plaintiff alleges defendant Martinez "mention[ed] [P]laintiff['s]

16   lawsuit," "refuse[d] to get the video of that day (1-28-12), and refuse[d] to call

17   Sonia Azevedo and other witnesses." Id.  In addition, Plaintiff alleges defendant

18   Martinez found Plaintiff guilty of excessive touching and told Plaintiff "he was not

19   able to go to canteen, phone, dayroom or outside yard for 30 consecutive days from

20   March 7, 2012 until April 6, 2012." Id. at 23.  Plaintiff further alleges he appealed

21   this penalty, but "Chief Deputy Warden L. Jackson failed to correct this illegal

22   polic[y]." Id.  Plaintiff also alleges defendants Martinez and Jackson violated

23   Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir. 1979) and Lopez v. Smith, 203

24   F.3d 1122, 1132 (9th Cir. 2000). Id. at 24.

25       **(2)    Hearing Before Defendant Lugo on March 25, 2014**

26       Plaintiff alleges on March 25, 2014, defendant Lugo held a disciplinary

27   hearing where he found Plaintiff violated a rule and rendered punishment of thirty

28   consecutive days without canteen, phone, dayroom, and outdoor exercise. Id. at

5

25.  Plaintiff alleges further defendant Lugo "illegally knowingly denied [P]laintiff outdoor recreation" after Plaintiff told him the lengthy confinement would cause harm "according to <u>Spain</u>, 600 F.2d at 199-200." <u>Id.</u>

## C.   MAIL INCIDENTS

Plaintiff alleges on September 11, 2012, he tried to send mail to his attorney but "between the officer picking up the mail and mail being deliver[ed] to the mail room, the mail was discarded." <u>Id.</u> at 8.  Plaintiff alleges he filed a "grievance to find out what official was responsible for discarding his legal mail, [and] B. Harris (inmate appeal coordinator) screen[ed]-out Plaintiff['s] inmate grievance." <u>Id.</u>

In addition, Plaintiff alleges on January 21, 2013, his mother sent him writing tablets and stamps but he did not receive them until February 15, 2013.  <u>Id.</u> at 9.  Plaintiff alleges he submitted a grievance "to discover who the official[]s were for the delayed or los[s] of his mail," but defendant Harris "would not process the appeal." <u>Id.</u>

Further, Plaintiff alleges on May 5, 2013, he sent mail to a process server, but the process server never received them.  <u>Id.</u>  Plaintiff alleges he "tried to find out what official[]s were responsible through a request to the mail room and inmate grievance," but defendant Harris "did not process the inmate grievance." <u>Id.</u>

Moreover, Plaintiff alleges on September 28, 2013, Valerie Rowlett sent him writing tablets but he did not receive them until November 2013. <u>Id.</u> at 9, 10. Plaintiff alleges he sent an "inmate request inquiring about the tablets, no-one ever responded to the request" and he filed a grievance "to obtain the names of the official[]s who w[ere] withholding his mail but B. Harris screen[ed]-out the inmate grievance and would not process the inmate grievance." <u>Id.</u> at 10.

Plaintiff also alleges defendant Harris "supported or upheld an unlawful action or decision of a protected constitutional liberty," impeded Plaintiff's access to the courts, obstructed his mail, and "supported or upheld his subordinates['] actions or decisions that continuously violated [P]laintiff['s] protected

constitutional rights to cause unnecessary pain and suffering" to "stop [P]laintiff['s] lawsuits." Id. at 10-12.

**D.    LAW LIBRARY ACCESS AND CONDITIONS**

Plaintiff alleges from February 2012 to March 2012, he missed deadlines in two pending lawsuits because the CSP-LAC law library was closed or had inadequate resources. Id. at 13. With respect to one of Plaintiff's lawsuits, Plaintiff alleges he had a deadline "to answer a motion to dismiss[], [P]laintiff requested to go to the law library, he was not allowed." Id. Plaintiff alleges "the law library was closed February and March 2012" and he asked "for an extension without notification, because the only document [P]laintiff receive[d] during that period was from Senior [L]aw [L]ibra[r]ian R. Rowe that was the law library was open Monday and [T]uesday, which was untrue." Id. at 13-14. Plaintiff alleges he eventually filed a response to the motion to dismiss, the lawsuit survived the motion to dismiss and he "was allowed to proceed forward with the claims." Id. at 14. Plaintiff alleges the lawsuit proceeded to summary judgment, but:

> due to lack of access to the law library and lack of legal material, many of [P]laintiff's motions did not have certificate of service and memorand[a] [of] points and authorities, [P]laintiff had to request (5) five extensions (without no institutional memorandum), on the fifth extension the court would not grant the extension and [P]laintiff's complaint was dismissed with prejudice.

Id. at 15. In addition, Plaintiff alleges defendant Rowe "made sure (in collaborating) that he impeded [P]laintiff['s] access to the court by not providing with adequate access to the law library until his complaint was dismissed and Captain Meador and Warden L. E. McEwen upheld this legal policy." Id. at 13-14, 16.

Further, Plaintiff alleges in April 2012, he was allowed in the library "once that month and during that year [P]laintiff went approximately 4 hours a month."

1    Id. at 14.  Plaintiff alleges:

2          when the library was open there w[ere] no case law books, state and

3          federal habeas practice and procedure, California Penal Code and

4          United States Code annotated were outdated, no paging was provided

5          and there w[ere] only five computers for no less than 12 inmates used

6          within 2 hours.  The computers had no print out so you have to[] read

7          [and] write down the material that was relevant usually within 30

8          minutes (because you have to share the computer) and there was no

9          memorandum ever provided about the closure or the inadequacies of

10         the library.

11   Id.  Plaintiff also alleges he complained of the law library's inadequacies to

12   defendants Rowe, Harris, and McEwen, but they never answered.  Id.  Moreover,

13   Plaintiff alleges defendants Rowe, McEwen, and Meador "did not provide

14   [P]laintiff adequate constitutional time in the law library from 2012 until March

15   2013."  Id. at 15.

16                                      **IV.**

17                           **STANDARD OF REVIEW**

18         As Plaintiff is proceeding in forma pauperis, the Court must screen

19   Plaintiff's FAC and is required to dismiss the case at any time if it concludes the

20   action is frivolous or malicious, fails to state a claim on which relief may be

21   granted, or seeks monetary relief against a defendant who is immune from such

22   relief.  28 U.S.C. § 1915(e)(2)(B); see Barren v. Harrington, 152 F.3d 1193, 1194

23   (9th Cir. 1998).

24         In determining whether a complaint fails to state a claim for purposes of

25   screening under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court applies the same pleading

26   standard from Rule 8 of the Federal Rules of Civil Procedure as it would when

27   evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

28   See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).  Under Rule 8(a), a

                                         8

complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007) (citation and internal quotation marks omitted). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and internal quotation marks omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation and internal quotation marks omitted). The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008) (citations and internal quotation marks omitted). "[W]e have an obligation where the p[laintiff] is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the p[laintiff] the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted).

If the court finds a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the plaintiff is <u>pro se</u>.  <u>Id.</u> at 1130-31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend.  <u>Cato</u>, 70 F.3d at 1107-11; <u>see also</u> <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 972 (9th Cir. 2009).

**V.**

**<u>DISCUSSION</u>**

**A.   PLAINTIFF FAILS TO STATE OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS**

**(1)   Applicable Law**

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); <u>see also</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985); <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity."  <u>Graham</u>, 473 U.S. at 166.  Because no respondeat superior liability exists under § 1983, a municipality is liable only for injuries that arise from an official policy or longstanding custom.  <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).  A plaintiff must show "that a [county] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."  <u>Gillette v. Delmore</u>, 979

10

F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks omitted).  In addition, he must show the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

### (2)  Analysis

Here, Plaintiff's official capacity claims against Defendants fail.  Plaintiff fails to identify any "formal governmental policy or a longstanding practice or custom" pursuant to which Defendants acted.  See Gillette, 979 F.2d at 1346.  Plaintiff's official capacity claims must therefore be dismissed.

## B.  PLAINTIFF MISJOINS HIS CLAIM AGAINST DEFENDANT LUGO

### (1)  Applicable Law

If a court issues an order granting a plaintiff leave to amend, the plaintiff's failure to comply with the court's order may warrant dismissal.  Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992).  In addition, under Federal Rule of Civil Procedure 20, a plaintiff may join defendants in a single complaint if: (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P. 20(a)(2).  Misjoinder occurs where the facts giving rise to claims lack "similarity in the factual background."  Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); see Talib v. Nicholas, No. CV 14-05871-JAK (DFM), 2015 WL 456546, at *9 (C.D. Cal. Feb. 2, 2015) ("General allegations are not sufficient to constitute similarity when the specifics are different.").

### (2)  Analysis

Here, Plaintiff misjoins his claim against defendant Lugo.  Plaintiff's original complaint failed to mention the March 25, 2014 hearing before defendant Lugo.  See Dkt. 1.  The Court's November 20, 2015 Order warned "Plaintiff shall not include new defendants or new allegations that are not reasonably related to the

1   claims asserted in the Complaint." Dkt. 10 at 17 (emphasis added). Despite this
2   Order, Plaintiff's FAC attempts to present a new claim against new defendant Lugo
3   unrelated to the claims presented in the original complaint. See Dkt. 11 at 25.
4   Plaintiff's claim against defendant Lugo must therefore be dismissed. See Ferdik,
5   963 F.2d at 1260.

6   **C.   PLAINTIFF FAILS TO STATE CLAIMS AGAINST DEFENDANTS**
7   **WOFFORD, RIVERA, AND SUTTON**

8       **(1)   Applicable Law**

9       In determining whether a complaint states a claim, "the tenet that a court
10  must accept as true all of the allegations contained in a complaint is inapplicable to
11  legal conclusions. Threadbare recitals of the elements of a cause of action,
12  supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556
13  U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v.
14  Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); Zamani,
15  491 F.3d at 996 (stating a court may dismiss a complaint "where there is no
16  cognizable legal theory or an absence of sufficient facts alleged to support a
17  cognizable legal theory").

18      **(2)   Analysis**

19      Here, Plaintiff's conclusory claims against defendants Wofford, Rivera, and
20  Sutton fail. Plaintiff contends defendant Wofford: (1) "upheld and enforce[d] the
21  legal policy;" (2) referred Plaintiff's grievances to defendant Rivera without
22  identifying responsible parties or answering any of Plaintiff's requests; and (3)
23  "upheld and did not correct" subordinates. Dkt. 11 at 20-21. In addition, Plaintiff
24  contends he filed a grievance and defendant Rivera: (1) responded to Plaintiff,
25  "stating the visitor [wa]s approved and nothing else;" and (2) "upheld and did not
26  correct" subordinates. Id. at 21. Further, Plaintiff contends defendant Sutton
27  "suspended [P]laintiff and Ms. Azevedo['s] visiting." Id. at 19. Such conclusory
28  statements provide no cognizable legal theory. See Zamani, 491 F.3d at 996.

Plaintiff fails to identify what constitutional amendment, if any, implicates upholding legal policies, referring grievances to other officials, expressing a visitor's approval, upholding subordinates, or suspending visits.  Plaintiff's claims against defendants Wofford, Rivera, and Sutton must therefore be dismissed.  See Iqbal, 556 U.S. at 678.

**D.    PLAINTIFF FAILS TO STATE CLAIMS AGAINST DEFENDANTS HARRIS, MCEWEN, AND MEADOR FOR VIOLATING HIS RIGHT TO ACCESS THE COURTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS**

**(1)    Applicable Law**

The First and Fourteenth Amendments provide the right to access the courts, which means inmates must be able to litigate claims challenging the conditions of their confinement without active interference by prison officials.  Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011).  To state a claim against prison officials for denial of access to the courts during a plaintiff inmate's pending civil litigation, the plaintiff must allege the prison officials acted "in order to hinder his ability to litigate his pending civil lawsuits."  Id. at 1104.  The plaintiff must also allege an actual injury, i.e., that some official action has frustrated or is impeding the plaintiff's attempt to bring a nonfrivolous legal claim.  Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011).

In addition, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  Starr, 652 F.3d at 1207 (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

///

**(2)    Analysis**

Here, Plaintiff's First and Fourteenth Amendment claims against defendants

Harris, McEwen, and Meador fail.  With respect to Plaintiff's mail incidents, Plaintiff alleges defendant Harris' mishandling of his grievances impeded his access to the courts.  Dkt. 11 at 10-12.  With respect to Plaintiff's lack of access to the CSP-LAC law library and the library's inadequacies, Plaintiff alleges "Captain Meador and Warden L. E. McEwen upheld this legal policy."  Id. at 13-14, 16. Plaintiff further alleges he complained of the library's inadequacies to defendants Harris and McEwen, but they never answered.  Id. at 14.  Moreover, Plaintiff alleges defendants McEwen and Meador "did not provide [P]laintiff adequate constitutional time in the law library from 2012 until March 2013."  Id. at 15. However, Plaintiff fails to allege: (1) defendants Harris, McEwen, and Meador were personally involved in depriving Plaintiff access to the courts; or (2) a sufficient causal connection between their wrongful conduct and the constitutional violation.  See Starr, 652 F.3d at 1207.  Plaintiff's First and Fourteenth Amendment claims against defendants Harris, McEwen, and Meador  must therefore be dismissed.

**E.     PLAINTIFF FAILS TO STATE A FOURTEENTH AMENDMENT DUE PROCESS CLAIM AGAINST DEFENDANT MARTINEZ**

**(1)     Applicable Law**

The Due Process Clause of the Fourteenth Amendment protects individuals against deprivations of "life, liberty, or property."  U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (internal citations and quotation marks omitted). Due process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732

(2011).  Due process affords no "protected liberty interest that would entitle [a plaintiff inmate] to the procedural protections" where: (1) thirty days of "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody;" and (2) the disciplinary segregation did not "inevitably affect the duration of [the plaintiff's] sentence."  <u>Sandin v. Conner</u>, 515 U.S. 472, 486-87, 115 S. Ct. 2293, 2302, 132 L. Ed. 2d 418 (1995) (holding "segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").

**(2)   Analysis**

Here, Plaintiff's Fourteenth Amendment due process claim against defendant Martinez fails.  Plaintiff alleges at the March 6, 2012 disciplinary hearing, defendant Martinez "refuse[d] to get the video of that day (1-28-12), and refuse[d] to call Sonia Azevedo and other witnesses."  Dkt. 11 at 19.  However, Plaintiff's deprivation of "canteen, phone, dayroom or outside yard for 30 consecutive days from March 7, 2012 until April 6, 2012," <u>id.</u> at 23, fails to constitute a liberty or property interest of which Plaintiff has been deprived, <u>see</u> <u>Sandin</u>, 515 U.S. at 486-87.  Plaintiff fails to allege his confinement presents "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  <u>Id.</u>  Plaintiff's Fourteenth Amendment due process claim against defendant Martinez must therefore be dismissed.

**F.   PLAINTIFF FAILS TO STATE EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT CLAIMS AGAINST DEFENDANTS HARRIS, MARTINEZ, AND JACKSON**

**(1)   Applicable Law**

Prison officials violate the Eighth Amendment when they deny humane conditions of confinement with deliberate indifference.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  To state a claim for

such an Eighth Amendment violation, an inmate must show objective and subjective components.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  The objective component requires an "objectively insufficiently humane condition violative of the Eighth Amendment" which poses a substantial risk of serious harm.  Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996).  The subjective component requires prison officials acted with the culpable mental state, which is "deliberate indifference" to the substantial risk of serious harm.  Farmer, 511 U.S. at 837-38; Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) (stating deliberate indifference "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" (internal quotation marks and citation omitted)).

A prison official "is deemed 'deliberately indifferent' to a substantial risk of serious harm when he knew of the risk but disregarded it by failing to take reasonable measures to address the danger."  Castro v. Cnty. of Los Angeles, 797 F.3d 654, 666 (9th Cir. 2015).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837-38.

**(2)   Analysis**

Here, Plaintiff's Eighth Amendment cruel and unusual punishment claims against defendants Harris, Martinez, and Jackson fail.  Plaintiff alleges defendant Harris screened out or refused to process Plaintiff's grievances, and "supported or upheld his subordinates['] actions or decisions that continuously violated [P]laintiff['s] protected constitutional rights to cause unnecessary pain and suffering."  Dkt. 11 at 10-12.  However, Plaintiff fails to show mishandling of Plaintiff's grievances constitutes an "objectively insufficiently humane condition

violative of the Eighth Amendment" which poses a substantial risk of serious harm.  <u>Osolinski</u>, 92 F.3d at 938.  In addition, Plaintiff offers no facts showing defendant Harris mishandled Plaintiff's grievances while knowing of and disregarding an excessive risk to inmate health or safety.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837-38.

Plaintiff further alleges defendant Martinez's penalty of thirty consecutive days without canteen, phone, dayroom, and outdoor exercise and defendant Jackson's inaction after Plaintiff appealed the penalty violated <u>Spain</u>, 600 F.2d at 199-200 and <u>Lopez</u>, 203 F.3d at 1132.  Dkt. 11 at 23-24.  Plaintiff's reliance on <u>Spain</u> is misplaced.  In <u>Spain</u>, the Court stated as follows: "we do not consider it necessary to decide whether deprivation of outdoor exercise is a per se violation of the eighth amendment.  Our ruling . . . applies to these plaintiffs who were assigned to [a structure used to segregate and discipline disruptive prisoners] for a period of years."  <u>Spain</u>, 600 F.2d at 199-200.  Unlike the plaintiffs in <u>Spain</u> who had no outdoor exercise for years, Plaintiff alleges deprivation of outdoor recreation of thirty days.  Dkt. 11 at 24.  Plaintiff's reliance on <u>Lopez</u> also fails.  In <u>Lopez</u>, the plaintiff provided facts creating a genuine issue of material fact about whether officials acted with deliberate indifference.  <u>Lopez</u>, 203 F.3d at 1133. Here, Plaintiff offers no facts showing whether defendants Martinez or Jackson rendered his penalty or failed to change the penalty while knowing of and disregarding an excessive risk to inmate health or safety.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837-38.  Plaintiff's Eighth Amendment cruel and unusual punishment claims against defendants Harris, Martinez, and Jackson must therefore be dismissed.

///

///

///

## G.   PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT ACCESS TO THE COURTS CLAIM AGAINST DEFENDANT ROWE MAY

1   **PROCEED**

2       **(1)    Applicable Law**

3       As stated in section V.D.(1), the First and Fourteenth Amendments provide

4   the right to access the courts.  <u>Silva</u>, 658 F.3d at 1103; <u>see</u> <u>Nevada Dept. of</u>

5   <u>Corrections</u>, 648 F.3d at 1018.

6       **(2)    Analysis**

7       Here, Plaintiff sufficiently alleges a First and Fourteenth Amendment access

8   to the courts claim against defendant Rowe.  <u>See</u> <u>Rhodes</u>, 408 F.3d at 567-68.

9   Plaintiff's First and Fourteenth Amendment access to the courts claim against

10  defendant Rowe may therefore proceed.

11  **H.    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS**

12          **AGAINST DEFENDANTS ROWE, BOJOROQUEZ, O'NEAL,**

13          **MARTINEZ, AND HARRIS MAY PROCEED**

14      **(1)    Applicable Law**

15      Allegations of retaliation against a plaintiff inmate's First Amendment rights

16  to speech or to petition the government may support a 42 U.S.C. § 1983 claim.  <u>See</u>

17  <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995).  Within the prison context, a

18  viable claim of First Amendment retaliation entails five elements: (1) the plaintiff

19  engaged in protected conduct; (2) an assertion that a state actor took some adverse

20  action against the plaintiff; (3) the adverse action was "because of" the plaintiff's

21  protected conduct; (4) the adverse action "would chill or silence a person of

22  ordinary firmness from future First Amendment activities;" and (5) the action did

23  not reasonably advance a legitimate correctional goal.  <u>Rhodes v. Robinson</u>, 408

24  F.3d 559, 567-68 (9th Cir. 2005).

25      **(2)    Analysis**

26      Here, Plaintiff sufficiently alleges First Amendment retaliation claims

27  against defendants Rowe, Bojoroquez, O'Neal, Martinez, and Harris.  <u>See</u> <u>Rhodes</u>,

28  408 F.3d at 567-68.  Plaintiff's First Amendment retaliation claims against

defendants Rowe, Bojoroquez, O'Neal, Martinez, and Harris may therefore proceed.

## VI.

## **LEAVE TO FILE SECOND AMENDED COMPLAINT**

For the foregoing reasons, the FAC is subject to dismissal.  However, as the Court is unable to determine whether amendment would be futile, leave to amend is granted.  See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995).

Accordingly, IT IS ORDERED THAT within twenty-one (21) days of the service date of this Order, Plaintiff choose one of the following options:

## A.    **PLAINTIFF MAY FILE A SECOND AMENDED COMPLAINT TO ATTEMPT TO CURE THE DEFICIENCIES DISCUSSED ABOVE**

If Plaintiff chooses to file a Second Amended Complaint ("SAC"), Plaintiff must clearly designate on the face of the document that it is the "Second Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form.  Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint.  In addition, the SAC must be complete without reference to the Complaint, FAC, or any other pleading, attachment, or document.  **The Clerk of Court is directed to mail Plaintiff a Central District civil rights complaint form to use for filing the SAC, which the Court encourages Plaintiff to use.**

An amended complaint supersedes the preceding complaint.  Ferdik 963 F.2d at 1262.  After amendment, the Court will treat all preceding complaints as nonexistent.  Id.  Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the SAC.  Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012).

Because this will be Plaintiff's second opportunity to amend his complaint to

1  rectify pleading deficiencies, the Court advises Plaintiff that it generally will not be

2  well-disposed toward another dismissal with leave to amend if Plaintiff files a SAC

3  that continues to include claims on which relief cannot be granted.  "[A] district

4  court's discretion over amendments is especially broad 'where the court has

5  already given a plaintiff one or more opportunities to amend his complaint.'"

6  Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012)

7  (citations omitted); see also Ferdik, 963 F.2d at 1261.  E.g., Kaplan v. Rose, 49

8  F.3d 1363, 1370 (9th Cir. 1994) ("Kaplan has already amended the complaint

9  twice . . . ."); Zavala v. Bartnik, 348 F. App'x 211, 213 (9th Cir. 2009) ("Dismissal

10  with prejudice was proper because Zavala was given two prior opportunities to

11  amend his complaint in order to correct the deficiencies identified by the district

12  court but failed to do so."); Smith v. Solis, 331 F. App'x 482, 482-83 (9th Cir.

13  2009) ("The district court properly dismissed the action with prejudice because

14  Smith's second amended complaint did not state a claim for deliberate indifference

15  and Smith failed to correct the defects.").  Thus, if Plaintiff files a SAC with claims

16  on which relief cannot be granted, the SAC will be dismissed without leave to

17  amend and with prejudice.

18  **B.      ALTERNATIVELY, PURSUANT TO FEDERAL RULE OF CIVIL**

19  **PROCEDURE 41(A), PLAINTIFF MAY REQUEST A VOLUNTARY**

20  **DISMISSAL WITHOUT PREJUDICE OF ALL OF HIS CLAIMS**

21  **EXCEPT FOR THOSE PERMITTED TO PROCEED IN SECTION**

22  **V.G. AND V.H. ABOVE**

23  If Plaintiff chooses this option, this action will proceed only on his: (a) First

24  and Fourteenth Amendment access to the courts claim against defendant Rowe;

25  and (b) First Amendment retaliation claims against defendants Rowe, Bojoroquez,

26  O'Neal, Martinez, and Harris.  **The Clerk of Court is directed to mail Plaintiff a**

27  **Notice of Dismissal Form, which the Court encourages Plaintiff to use.**

28  The Court cautions Plaintiff that failure to timely obey this Order will result

1   in dismissal of this action for failure to prosecute and obey court orders.

2

3   Dated: January 7, 2016

4   _____
    HONORABLE KENLY KIYA KATO
5   UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21